# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARDELL KENNEDY, | : | |
|     *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-1076 |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
|     *Defendants*. | : | |

## **MEMORANDUM**

**PAPPERT, J.**                                                                                                       **APRIL 16, 2019**

    *Pro se* Plaintiff Ardell Kennedy, a prisoner confined at the Kintock Community Corrections Center, has filed a civil rights Complaint and a Motion to Proceed *In Forma Pauperis*. The Defendants are the City of Philadelphia, Philadelphia Mayor James Kenney, Philadelphia Police Commissioner Richard Ross, Jr., Philadelphia Police Officers Hugo Lemos, Joseph Koger and Gregory Brown, Pennsylvania Governor Tom Wolf, Parole Agent Chapman and Parole Supervisor Donnie Lynch. Kennedy alleges that he was falsely arrested at a DUI checkpoint and later had his parole status changed. Because it appears that Kennedy is unable to afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis* and dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

I

    Kennedy alleges that on July 13, 2018 he drove into a DUI checkpoint and was arrested by Officer Lemos without a warrant or probable cause. He was transported to police headquarters at Eighth and Race Streets where a blood test was performed without a warrant or probable cause. He had a preliminary hearing on July 14, 2018 and was charged with driving under the influence and "given a bail ROR," but was held

in custody for violating the terms and conditions of his parole. (ECF No. 2 at 7.)[1] Public records reflect that an Order granting Kennedy's Motion to Suppress Statements was granted on November 6, 2018 and the charges were withdrawn on January 23, 2019. *Commonwealth v. Kennedy*, MC-CR-0018118-2018.

On January 28, 2019, while still in custody at SCI Frackville following his arrest, Kennedy was directed to report to Kintock CCC by a parole agent. (*Id.*) He was released from SCI Frackville on January 30, 2019 and went to see Parole Agent Chapman to find out why he was being recommitted to a community corrections center when he had not violated his parole. (*Id.*) Chapman told him that his previously devised "home plan" was no longer good and Chapman's supervisor Donnie Lynch agreed with Chapman's decision. (*Id.*) Kennedy asserts that Chapman and Lynch violated his constitutional rights by recommitting him when there was no parole violation. (*Id.*)

Kennedy asserts claims against the City, Mayor Kenney, Commissioner Ross, Officers Lemos, Koger and Brown, Governor Wolf, Chapman and Lynch for malicious prosecution in violation of the Fourth and Fourteenth amendments (Count 1); false arrest and false imprisonment in violation of the Fourth amendment (Count 2); malicious prosecution in violation of his rights to equal protection under the laws and under the Fourth and Fifth amendments (Count 5); false arrest and false imprisonment under the Fourth and Fifth amendments (Count 6); common law malicious prosecution (Count 7), common law false arrest (Count 8) common law false imprisonment (Count 9); and two claims against Mayor Kenney, Commissioner Ross and Governor Wolf for

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

deliberate indifference and "illegal policies, practices, customs, training, and supervision (Counts 3, 4)." (*Id.*) He seeks compensatory, punitive and nominal damages. (*Id.* at 11.)

II

The Court will grant Kennedy leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it is frivolous or fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.*

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short a plain statement of the claim showing that the pleader is entitled to relief." A district court may *sua sponte* dismiss a complaint that does not comply with Rule 8 if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted). This Court has noted that Rule 8 "requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue."

3

*Fabian v. St. Mary's Med. Ctr.*, No. Civ. A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (quotations omitted).

III

Section 1983 of Title 42 of the United States Code provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

A

Kennedy has named the Mayor, Police Commissioner and Governor in each substantive count of the Complaint. However, the Complaint mentions no facts concerning how these Defendants were personally involved in his arrest and assignment to the Kintock CCC. Accordingly, the individual capacity claims against these Defendants are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

Kennedy has also raised separate individual-capacity claims in Counts 3 and 4 against these Defendants asserting supervisory liability based on their deliberate indifference to "illegal policies, practices, customs, training, and supervision." (ECF No. 2 at 8.) There are "two general ways in which a supervisor-defendant may be liable for

unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Because Kennedy asserts no facts that would establish a plausible claim based on supervisor liability, these claim will also be dismissed pursuant to § 1915(e)(2)(B)(ii).

B

Kennedy has named the Mayor, Police Commissioner and Governor in their official capacities as well as their individual capacities. Suits against municipal employees in their official capacities are "treated as claims against the municipal entities that employ these individuals." *Smith v. School Dist. of Philadelphia*, 112 F. Supp. 2d 417, 425 (E.D. Pa. 2000) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). This is because, in a suit against a municipal official in his official capacity, the real party in interest is the municipal entity and not the named official. *See id.* at 424; *see also Waites v. City of Philadelphia*, Civ. A. No. 00-2481, 2001 WL 484082, at *2 (E.D. Pa. March 5, 2001) (dismissing claims against city officials in their official capacities

5

because such claims are simply another way of pleading an action against the employing government entity).

Municipalities such as the City of Philadelphia are "persons" who may be liable under § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). To establish municipal liability under *Monell*, a plaintiff must "identify the challenged policy, [or custom,] attribute it to the [municipality] itself, and show a causal link between execution of the policy, [or custom] and the injury suffered." *Demeter v. City of Bethlehem*, Civ. A. No. 03-6825, 2004 WL 1166572, at *4 (E.D. Pa. May 20, 2004) (citing *Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir.1984)).

The claims that Kennedy seeks to assert against the Mayor and the Police Commissioner in Counts 3 and 4 in their official capacities do not meet the standard for Rule 8 and will be dismissed. Other than asserting conclusory allegations that these supervisor-defendants were deliberately indifferent to policies that allegedly violated Kennedy's constitutional rights, he provides no specific details regarding what these policies were, which defendant improperly implemented them, and how they harmed Kennedy. He has thus failed to provide enough information to put the Defendants on sufficient notice to prepare a defense and permit the Court to determine the issue. Because Kennedy is proceeding *pro se*, the Court will grant him leave to amend his Complaint to attempt to meet the requirements of Rule 8. If he chooses to file an amendment, Kennedy must provide a short plain statement of how these Defendants acted in their official capacities to violate his constitutional rights, identify the specific policy or custom they implemented, and explain how that policy or custom is causally linked to Kennedy's injury.

The claims against Governor Wolf will be dismissed with prejudice. An official capacity claim against the Governor is actually a claim against the Commonwealth, which is entitled to immunity under the Eleventh Amendment. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are . . . entitled to Eleventh Amendment immunity."). Accordingly, all "official capacity" claims against Governor Wolf are additionally subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Because any attempt to amend the claims against the Governor would be futile, they are dismissed with prejudice.

C

Kennedy asserts constitutional claims for malicious prosecution (Count 1, 5), false arrest/false imprisonment (Counts 2, 6) and common law claims of malicious prosecution (Count 7), false arrest (Count 8) and false imprisonment (Count 9). Although he lists all Defendants in each of these claims, he has only made factual allegations concerning his arrest against Officer Lemos, contending only in conclusory terms that Officer Lemos arrested him "illegally . . . without a search warrant or probable cause." Because conclusory allegations do not suffice to meet the pleading standard, the false arrest and malicious prosecution claims will be dismissed pursuant to § 1915(e)(2)(B)(ii). However, because the public records indicate that the charges resulting from Kennedy's arrest were dismissed after a suppression hearing, the Court cannot say that the claims are futile and will permit Kennedy an opportunity to file an amended complaint setting forth a short plain statement of the facts supporting his false arrest and malicious prosecution claims.

7

Although Kennedy lists all Defendants in the false imprisonment claims as well, the Court interprets the claims — to the extent they are distinct from the false arrest and malicious prosecution claims — as arising from the alleged decisions by Defendants Chapman and Lynch to have him confined at Kintock CCC rather than permitting him to return to his previously approved home plan. These claims are not plausible.

Kennedy asserts a generalized violation of his rights under the Fourth and Fourteenth amendments. He also specifies in Count 5 that he suffered an Equal Protection clause violation. Because there is no allegation that Kennedy was treated any differently from another person in a similar situation, the Equal Protection clause claim is not plausible. *See Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003) (stating that to prevail on an Equal Protection claim, the burden rests with the plaintiff to present evidence that he has been treated differently from persons who are similarly situated).

To the extent that the balance of the claims attempt to assert a violation of the Due Process clause, while an inmate has no constitutional right to parole, *see Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("A state may . . . establish a parole system, but it has no duty to do so."), "once a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *See Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980). Hence, a plaintiff has a substantive due process right in being treated fairly during the parole process. *See Jubilee v. Horn*, 975 F. Supp. 761, 764-65 (E.D. Pa. 1997), aff'd, 151 F.3d 1025 (3d Cir. 1998); *accord Bermudez v. Duenas*, 936 F.2d 1064, 1067 (9th Cir. 1991)

(recognizing that "early release statutes can create 'a liberty interest protected by due process guarantees.'") (quoting *Greenholtz*, 442 U.S. at 12).  Kennedy's arrest and the charges arising from it, irrespective of the fact that they were later withdrawn, supplied the necessary justification for the Defendants' decision.  Kennedy therefore has not stated a plausible substantive due process claim that the decision to alter his parole conditions was arbitrary or constitutionally impermissible.

In order to state a procedural due process claim, "a plaintiff must allege that (1) he was deprived of an interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).  Prisoners and parolees enjoy a more limited range of protected interests than average citizens.  *Johnson v. Mondrosch*, 586 F. App'x 871, 874 (3d Cir. 2014) ("As a parolee, [an individual] does not enjoy 'the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions.'") (internal quotation marks and citation omitted) (second alteration in the original).  Also, it is well established that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz*, 442 U.S. at 7.  Accordingly, due process in parole proceedings is satisfied so long as the procedures employed provide the inmate with notice and an opportunity to be heard.  *Id.* at 16.  Appended to Kennedy's Complaint is a Notice issued by the Pennsylvania Board of Probation and Parole that he would be detained and setting a hearing date.  (ECF 2 at 20)  Accordingly, Kennedy's procedural due process claim is also not plausible.

IV

For the foregoing reasons, the Court will grant Kennedy leave to proceed *in forma pauperis* and dismiss his Complaint. Kennedy is granted leave to file an amended complaint if he chooses to do so, limited to his claims of false arrest/false imprisonment/malicious prosecution against Officer Lemos, and his *Monell* claim. An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**